JALIE H. COX, admx., v. HIGH POINT, R., A. & S. RAILROAD
COMPANY.

(Filed 15 April, 1908).

**Railroads—Negligence—Evidence—Scintilla—Question for Jury.**

When it appeared from the plaintiff's evidence, in an action to recover damages for the negligent killing by the defendant railroad company of plaintiff's intestate, that the car upon which plaintiff's intestate was usually employed was derailed, owing to the unsound condition of the track, together with other circumstantial evidence that he was thereon at the time of the derailment; that he was well and left home in the morning for the usual purpose of the trip as a railway postal clerk and returned home on the afternoon of the same day sick, nervous and exhibiting signs of serious injury; and when from the testimony of his attending physician it appeared that immediately thereafter he had such symptoms and bruises on his body as to indicate the conditions from which his death soon afterwards resulted, it was error in the court below to sustain defendant's motion for judgment as of nonsuit upon the evidence, it being more than a scintilla and sufficient to take the case to the jury.

ACTION tried before *W. R. Allen, J.,* at September Term, 1907, of DURHAM.

Plaintiff, administratrix, sues to recover damages for the death of her intestate, alleged to have been caused by the negligence of defendant.

For the purpose of disposing of the single exception in the record the following facts may be regarded as proven: Plaintiff's intestate, residing at Ashboro, N. C., was on and prior to 7 March, 1905, employed by the United States as a railway postal clerk, with his run from Ashboro to High Point, N. C., and return, over a branch of defendant's system. He was married, thirty years of age, of sober habits, industrious, economical and receiving a salary of $1,000. On 14 February, 1905, he went to Dr. Burrus, residing in High Point, for the purpose of submitting to a physical examination and having an application to the Civil Service Department filled up, etc. Dr. Burrus says that he made a

147—23

careful examination of his physical condition—made certain analyses, took his pulse, etc.—and found nothing whatever wrong with any of his organs. He was in a normal condition, thin, lean—naturally so. His wife testifies that he was in his usual health on 7 March, 1905. On the morning of that day he left home about 4 o'clock to make his usual trip as postal clerk. The train left at 4:40 A. M. for High Point. He returned on the afternoon of that day sick, nervous— looked as if something had happened. Never went out again. Dr. Burrus says that he saw him on 8 March, 1905. His feet and limbs were swollen, he was nervous, his temperature was high, he complained of severe frontal headache, his face was swollen. He found a bruise one and a half or two inches broad and three to four inches long across the right hip, leading over to the spinal column, over the right kidney, which was congested. He mentioned other symptoms and conditions indicating serious illness. He saw him again the evening of same day. His symptoms were very much worse, his fever was high, and he made analysis and found trouble. He saw intestate almost daily until his death, 19 March, 1905. The Doctor says: "The immediate cause of his death, I think, was pneumonia—hyperstatic pneumonia. The injury which I have described produced the pneumonia, I think." He gave a detailed account of his condition and symptoms as the trouble developed to the time of his death. Other witnesses, including his wife, testified to the same effect. The engineer in charge of the train on 7 March from Ashboro to High Point says that at some point between the two stations, at a curve, the mail car, which was one compartment of a combination car, jumped the track, carrying several other cars off and wrecking the train. The "brakebeam" of this car was broken and the car was left at High Point. The flagman says that intestate was mail clerk on that train. There was evidence that intestate was seen in a box car on the return of the train to Ashboro, looking sick. There was evidence that

the condition of the track at the place of the wreck was not good; it was not ballasted.

At the conclusion of the evidence, upon defendant's motion, his Honor rendered judgment of nonsuit.    Plaintiff appealed.

*R. C. Strudwick, Justice & Broadhurst* and *T. J. Murphy* for plaintiff.

*Wilson & Ferguson* for defendant.

Connor, J., after stating the facts: Was plaintiff's intestate injured while in the mail car on defendant's road?  Was such injury caused by the wreck of the car?   Did such injury cause his death?   Was the wreck caused by the negligence of defendant company?   The plaintiff undertakes to establish by legal evidence the affirmative of each of these propositions as the basis for a recovery.   She, by her learned counsel, earnestly contends that she has introduced testimony which is very much more than a mere *scintilla,* or the basis for a conjecture or guess that the facts are as she alleges.   If she is correct in this contention his Honor should have submitted the issues, under proper instructions, to the jury; otherwise the judgment of nonsuit was correctly rendered.   This is elementary.   The law is clear.   Its application to particular cases is sometimes difficult.   This is illustrated in many cases in our own and other reports.  It is seldom that appellate courts are unanimous in their opinions in such cases.   Taking the facts established, and the reasonable inferences of which they are capable, most favorable to the plaintiff, we are of the opinion that the plaintiff was entitled to go to the jury.   We do not think it is a strain upon a logical process of deduction to come to the conclusion upon the facts that on the morning of 7 March the plaintiff, in his usual health, found by the physician less than a month before to be normal, left his home in the discharge of his duty to enter and remain in the mail car from Ashboro to High Point, not exceeding twenty-eight miles; that he was in the car at the time it jumped the track

and by striking or being thrown against iron racks or table was bruised on his body and in the region of his kidneys (he was found upon examination to have symptoms indicating an injury to that vital organ); that these symptoms developed into acute Bright's disease, resulting in pneumonia and causing his death on 19 March, 1905. The intelligent physician who testified at length gives a clear and satisfactory explanation of the conditions and symptoms. While, of course, we are discussing the testimony for the sole purpose of testing the question of law, which is alone for our consideration, the jury may reach an entirely different conclusion. They may adopt some one or more of the not unreasonable theories suggested by the learned counsel for defendant or may conclude that the questions are in so much doubt that the scales hang evenly balanced, in which case they would find for defendant. However this may be, we think the testimony is of sufficient probative force and is capable of such reasonable inferences consistent with plaintiff's contention as to entitle her to have the finding of the jury before she is denied a recovery. The fact of derailment, certainly in the light of the testimony in regard to the condition of the track, carries that issue to the jury. The judgment of nonsuit must be set aside and the case proceeded in as indicated in this opinion.

New Trial.